FILED
CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 3 1 2014 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARIO OCAMPO,

Plaintiff,

-against-

BRIAN FISCHER, ANDREA EVANS, CARL J. KOENIGSMANN, DR. EZEKWE, and DENNIS BRESLIN,

Defendants.
-------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-4583 (CBA)(MDG)

**AMON, Chief United States District Judge.**

Plaintiff Mario Ocampo brought this pro se action pursuant to 42 U.S.C. § 1983 against defendants Brian Fischer, Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"); Andrea Evans, Chairwoman of the New York State Board of Parole; Dr. Carl J. Koenigsmann, DOCCS Deputy Commissioner and Chief Medical Officer; Dr. Felix Ezekwe; and Dennis Breslin, former Superintendent of the Arthur Kill Correctional Facility.[1] Ocampo alleges that he was not provided with adequate medical care for a variety of medical conditions he suffered from while he was incarcerated. Defendants moved to dismiss the complaint, arguing that Ocampo failed to exhaust his claim that he was denied treatment for Hepatitis C, and that Ocampo failed to sufficiently plead that each defendant was personally involved in the alleged denial of medical care.

Currently before the Court is the comprehensive Report and Recommendation ("R&R") issued by Magistrate Judge Go, which recommends that the Court (1) find that defendants did not satisfy their burden to demonstrate that Ocampo failed to exhaust available administrative remedies; (2) dismiss the claims against Fischer, Ezekwe, and Evans; (3) grant Ocampo leave to

[1] Ocampo filed his complaint pro se and opposed the motion to dismiss pro se, but as of August 14, 2014 is represented by counsel. (See Notice of Appearance, D.E. # 47.)

amend his claims against Ezekwe; and (4) deny the motion to dismiss the claims against Koenigsmann and Breslin. Dr. Koenigsmann and Superintendent Breslin filed timely objections to portions of the R&R, and the Court has conducted a de novo review of those portions of the R&R. For the reasons that follow, the Court adopts the recommendations of the R&R.

## BACKGROUND

The Court assumes familiarity with the facts and background of this litigation, and incorporates the statement of facts set forth in the R&R. (R&R at 2-9.) The following are the facts relevant to the objections raised by Dr. Koenigsmann and Superintendent Breslin.

Ocampo alleges that he received insufficient or improper medical care for several conditions he suffered from while incarcerated. Specifically, Ocampo alleges that defendants denied him medical treatment for Hepatitis C, failed to promptly conduct an MRI, delayed diagnosing and treating two torn ligaments in his knee, and failed to provide medical boots and other treatment for a circulatory disease affecting his legs, feet and ankles. (Compl. at 4-5.) With respect to his Hepatitis C claim, Ocampo was diagnosed with Hepatitis C in 2001 or 2002, (id. at 4), and received an unsuccessful course of treatment for Hepatitis C that ended in July 2010, (Pl.'s Opp., D.E. # 13-1 at 48).

After this failed Hepatitis C treatment, Ocampo sought a new course of treatment. In January 2011, Ocampo had a conversation with Dr. Jean-Baptiste in which Dr. Jean-Baptiste advised Ocampo that DOCCS was waiting for a new drug to be approved by the FDA. (Id. at 1.) In March and April 2011, Ocampo sent letters to Dr. Ezekwe and Dr. Jean-Baptiste, respectively, in which he sought other treatment options for his Hepatitis C in light of his previous unsuccessful treatment. (Id. at 21-22, 51.) By memorandum dated June 8, 2011, Dr. Jean-Baptiste informed Ocampo that his "request for retreatment for Hepatitis C has been denied by

the Chief Medical Officer. The recommendation was made that we wait for the new treatment to become available as you have failed treatment with Pegasys." (Id. at 50.)

Ocampo subsequently filed a grievance dated July 15, 2011 with the Inmate Grievance Resolution Committee ("IGRC") requesting that he be "given all the proper medical treatments" for Hepatitis C. (Okereke Decl. Ex. A, D.E. # 38-1 at 2.) He explained that "[i]n early June, 2011 Albany responded to my request for the Hep C treatments with [a] denial." (Id.) A memorandum to Ocampo dated July 20, 2011 states that "there is no other approved treatment. You failed the only approved treatment. Per NYSDOCS, NYSDOH, and all medical standards there are no proven treatments available to you at this time. You have been informed on numerous occasions by your MD." (Id. at 5.) On July 27, 2011, however, an addendum to the memorandum states "You are approved for 2nd treatment. You will receive it once NYSDOCC has a protocol in place." (Id. at 6.)

An undated IGRC form states: "Grievance is Accepted – Medical Department is aware of new treatment. Currently working on how to proceed [with] treatment." (Pl.'s Opp., D.E. # 13-1 at 2.) At the bottom of this form, Ocampo indicated that he wished to appeal the IGRC's response to the Superintendent. (Id.) Superintendent Breslin subsequently issued a decision on August 8, 2011, which stated that the "[i]nvestigation revealed [that] grievant is approved for 2nd treatment. Grievant will receive the treatment once NYS DOCCS has a protocol in place." (Okereke Decl. Ex. A, D.E. # 38-1 at 7.) It is undisputed that Ocampo did not appeal this decision to the Central Office Review Committee ("CORC")—the third and final step in the grievance process. As of February 2012, the new Hepatitis C treatment was still not available to Ocampo. (Pl.'s Opp., D.E. # 13-1 at 53.) Ocampo alleges that the failure to provide him with

proper treatment for Hepatitis C has resulted in, among other things, cirrhosis of the liver. (Compl. at 4.)

With respect to Ocampo's other conditions, he alleges that he had to wait over a year to receive a necessary MRI. (Id.) After he did receive the MRI he requested, Ocampo was diagnosed with two torn ligaments in his right knee but allegedly was not provided with any medical treatment to repair his knee. (Id.) Ocampo also alleges that he waited two years for medical boots/support stockings to treat his circulatory condition. (Id. at 4, 5.) Finally, he alleges that the medical providers at Arthur Kill were negligent in failing to adequately treat issues with his feet and ankles. (Id.) Ocampo seeks monetary damages for "all of the years of neglect and pain" he has endured as a result of inadequate medical care. (Id. at 6.)

## STANDARD OF REVIEW

When deciding whether to adopt a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). To accept those portions of the R&R to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Jarvis v. N. Am. Globex Fund, L.P, 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (internal quotation marks and citation omitted). When specific objections are made, however, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

## DISCUSSION

### I. Exhaustion of Administrative Remedies

In their motion to dismiss defendants argued that, under the Prison Litigation Reform Act ("PLRA"), Ocampo did not exhaust his claim that he was denied treatment for Hepatitis C

because (1) his complaint referred to a May 20, 2011 denial of treatment for Hepatitis C, but the only grievance Ocampo filed regarding Hepatitis C treatments related to a denial of treatment in early June 2011; and (2) even assuming Ocampo's grievance was related to the denial of treatment alleged in his complaint, he failed to exhaust his administrative remedies because he did not appeal to the CORC. Magistrate Judge Go converted the motion to dismiss into one for summary judgment on the limited issue of exhaustion because it was not clear from the complaint that Ocampo failed to exhaust this claim. As an initial matter, the R&R found that notwithstanding the discrepancy in dates, Ocampo's grievance gave the prison administration sufficient notice of the alleged failure to treat Ocampo's Hepatitis C. Further, the R&R found that defendants had failed to satisfy their burden to demonstrate that there was an administrative remedy available to Ocampo after he received the Superintendent's favorable determination dated August 8, 2011, in which Ocampo was approved for a new Hepatitis C treatment. The objections filed by Dr. Koenigsmann and Superintendent Breslin dispute both of these determinations.

First, Dr. Koenigsmann and Superintendent Breslin argue that the R&R erred in finding that Ocampo's grievance regarding a June 2011 denial of Hepatitis C treatments was sufficient to exhaust the claim in his complaint that he was denied treatment on May 20, 2011. Specifically, they argue that it is "reasonable to infer that there were two separate denials of retreatment"—one in May 2011 and one in June 2011—and that Ocampo's grievance regarding the June 2011 denial did not provide defendants with sufficient notice to resolve the earlier May 2011 denial of retreatment. (Defs.' Objections, D.E. # 44 at 4-7.) This argument is without merit.

The Second Circuit has stated that in order to exhaust, an inmate's allegations must provide "enough information to 'alert the prison to the nature of the wrong for which redress

[was] sought.'" Espinal v. Goord, 558 F.3d 119, 127 (2d Cir. 2009) (quoting Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004)). Here, Ocampo's July 15, 2011 grievance explained that his first Hepatitis C treatment failed and that his request for a new Hepatitis C treatment was denied in early June 2011. (Okereke Decl. Ex. A, D.E. # 38-1 at 2.) This grievance provided sufficient information to prison officials about the conduct of which Ocampo complained at that time and in the instant action: the failure to provide Ocampo with a new Hepatitis C treatment in 2011 after his first treatment was unsuccessful.[2] That this grievance provided prison officials with sufficient information to remedy the problem is clear from the July 27, 2011 response from the nurse and the August 8, 2011 response from Superintendent Breslin, both of which indicated that Ocampo would receive a second treatment when there was a protocol in place for the new drug. (Okereke Decl. Ex. A, D.E. # 38-1 at 6-7.) Accordingly, the Court finds that the July 15, 2011 grievance was sufficient to exhaust Ocampo's claim in his complaint that Dr. Koenigsmann denied him treatment for Hepatitis C in May 2011, and adopts the R&R's conclusion on this ground.

In their objections, Dr. Koenigsmann and Superintendent Breslin further argue that, assuming Ocampo's grievance regarding a June 2011 denial of Hepatitis C treatment was sufficient to exhaust his claim that he was denied treatment in May 2011, he nonetheless failed to exhaust administrative remedies because he did not appeal his grievance to the CORC. (Defs.' Objections, D.E. # 44 at 7-10.) Ocampo completed the first two steps of the administrative process and received a determination from Superintendent Breslin on August 8, 2011, which stated that Ocampo would receive a second Hepatitis C treatment once a protocol for the new

[2] The Court notes that, in his grievance form, Ocampo stated that "Albany" denied his request for Hepatitis C treatments, (Okereke Decl. Ex. A, D.E. # 38-1 at 2), and in his complaint he stated that Dr. Koenigsmann denied his request for Hepatitis C treatment, (Compl. at 4). The Court understands Ocampo's reference to "Albany" to be a reference to Dr. Koenigsmann, who was the Deputy Commissioner/Chief Medical Officer located in Albany, NY in 2011. (See, e.g., Pl.'s Opp., D.E. # 13-1 at 31.)

drug was in place. It is undisputed that appeal to the CORC is the final step in the administrative review process and that Ocampo did not appeal the Superintendent's decision to the CORC. Ocampo, however, argued in opposition to the motion to dismiss that "[t]he Grievance response was totally in favor of the plaintiff . . . [and] thus plaintiff had no legal reason to use the other steps of the Central Office Review . . . tier system to appeal." (Pl.'s Opp., D.E. # 13 at 1.) In light of the favorable determination from Superintendent Breslin at the second level of administrative review, the Court agrees with the R&R's finding that the defendants failed to demonstrate that there was an available administrative remedy that Ocampo failed to exhaust.

As noted in the R&R, failure to exhaust may be excused in certain limited circumstances as set forth in Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004). Specifically, failure to exhaust may be excused when "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Hemphill, 380 F.3d at 686)). As discussed in the R&R, in Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004), the Second Circuit found that although the prisoner had not appealed the Superintendent's favorable determination to the CORC, he had nonetheless fully exhausted the available administrative remedies because there was "no mechanism in DOCS regulations that allow[ed] inmates to appeal a favorable decision where prison officials fail[ed] to implement that decision." Id. at 668.

As an initial matter, the Court rejects defendants' argument that the Hemphill exceptions are no longer viable in light of the Supreme Court's decision in Woodford v. Ngo, 548 U.S. 81

(2006). The Second Circuit has noted, without deciding, that Woodford may have impacted the second and third exceptions recognized in Hemphill. See Amador v. Andrews, 655 F.3d 89, 102 (2d Cir. 2011) ("We have questioned whether, in light of Woodford, the doctrines of estoppel and special circumstances survived."). The Second Circuit, however, recently rejected as "meritless" the argument that Woodford abrogated the "exemption to the PLRA for inmates to whom the normal grievance system was unavailable." Johnston v. Maha, 460 F. App'x 11, 15 n.6 (2d Cir. 2012) (summary order) (finding plaintiff was excused from exhaustion requirement because grievance process was "unavailable to him when he was moved to a prison facility in a different jurisdiction").

Further, the Court agrees with the R&R's conclusion that the defendants have not established that there were administrative remedies available to Ocampo that he failed to exhaust after he received Superintendent Breslin's favorable determination. Importantly, "[f]ailure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus defendants have the burden of proving that [plaintiff's] . . . claim has not been exhausted." Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). Here, the defendants have not satisfied their burden. Dr. Koenigsmann and Superintendent Breslin correctly acknowledge in their objections that "the relevant issue in this case is . . . whether the administrative remedies were available to [Ocampo]," but they continue to argue that Ocampo should have appealed his grievance to the CORC. (Defs.' Objections at 8-9.) Appeal to the CORC within 7 days, however, is generally available to an inmate who is not satisfied with the Superintendent's response. (See Hale Decl., D.E. # 17 ¶ 6 ("If the inmate disagrees with the determination of the superintendent, he has seven calendar days to appeal said determination to CORC.").) Defendants fail to explain how this form of appeal to the CORC was available to

Ocampo given that the Superintendent's decision granted him what he requested—a new Hepatitis C treatment as soon as a protocol for the treatment was in place.

Moreover, although there is now a mechanism by which a prisoner can appeal to the CORC based on the failure to implement favorable grievance decisions, see N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.5(c)(4) ("If a decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance."), defendants have not established that this specific mechanism was available to Ocampo.[3] Indeed, defendants did not mention this administrative procedure in their motion or in their supporting affidavit regarding the administrative grievance process available to Ocampo. (See Defs.' Mem., D.E. # 16 at 6-7 (explaining the three-step grievance process and stating that "if the inmate is not satisfied with the superintendent's answer, he may then appeal to CORC."); Hale Decl. D.E. # 17 ¶ 6 ("If the inmate disagrees with the determination of the superintendent, he has seven calendar days to appeal said determination to CORC.").) Even after Magistrate Judge Go discussed this administrative procedure in the R&R, Dr. Koenigsmann and Superintendent Breslin only mention in a footnote that "DOCCS now has an administrative procedure whereby inmates can appeal the failure to implement favorable grievance decisions to the CORC." (Defs.' Objections at 9 n.3 (citing R&R at 18-19).) Defendants still make no attempt to establish that this procedure was available to Ocampo in the facility in which he was incarcerated and that it applied to Ocampo's situation. See Price v. Reilly, 697 F. Supp. 2d 344, 355 n.12 (E.D.N.Y. 2010) (stating that the court was unable to conclude that there was an administrative remedy available to plaintiff when defendants had "not submitted any evidence, by affidavit or otherwise, that NCCC

[3] The R&R, after discussing this procedural mechanism, stated that the situation in the instant action "cannot be characterized as a failure to implement the Superintendent's decision" because "the condition precedent to the implementation of the Superintendent's decision"—the creation of a protocol for the new treatment—never occurred. (R&R at 17-19.) The Court does not adopt this reasoning from the R&R but instead relies on defendants' failure to demonstrate that this procedural mechanism was "available" to Ocampo.

procedures offer[ed] a remedy to address the particular situation in this case," and noting that although the DOC regulations permitted appeals from unimplemented favorable determinations, it did "not follow that the same procedure applies at the NCCC.").

The Court also notes that a liberal reading of Ocampo's statement that there was no "legal reason" to continue with the grievance process in light of the Superintendent's favorable decision suggests that he was not aware of his ability to appeal the Superintendent's favorable determination if it was not implemented within 45 days. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (internal quotation marks and citations omitted)). The availability of administrative remedies is determined based on whether "a similarly situated individual of ordinary firmness [would] have deemed them available." Rivera v. New York City, No. 12-CV-0760(DLC), 2013 WL 6061759, at *4 (S.D.N.Y. Nov. 18, 2013) (declining to grant defendants' motion for summary judgment on issue of exhaustion without further information in part because defendant failed to submit evidence as to whether the applicable grievance procedure was publicized and plaintiff claimed he was unaware of such procedure). "District courts have consistently held that an administrative remedy is not available to an inmate who is not informed of the grievance procedure." Id. (citing Burgess v. Garvin, 01-CV-10994(GEL), 2004 WL 527053, at *3 (S.D.N.Y. Mar. 16, 2004); Arnold v. Goetz, 245 F. Supp. 2d 527, 538 (S.D.N.Y. 2003)); see also Santana v. City of New York, No. 13-CV-3034(SAS), 2014 WL 1870800, at *5 (S.D.N.Y. May 7, 2014) ("[A]n inmate-plaintiff's failure to exhaust administrative remedies may be excused if he has not been informed of the procedural requirements for availing himself of the remedy." (citations omitted)).

Here, defendants have made no attempt to establish that a similarly situated individual would have been aware of the ability to appeal a favorable determination to the CORC within 45 days. As discussed above, defendants did not discuss this administrative remedy in any of their briefing on the motion to dismiss or in their objections to the R&R. Moreover, the Appeal Statement provided with Superintendent Breslin's August 8, 2011 decision does not inform inmates that they can appeal if a favorable determination is not implemented within 45 days; rather, it only explains that "[i]f you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. Please state why you are appealing this decision to C.O.R.C." (Okereke Decl. Ex. A, D.E. # 38-1 at 7.) Similarly, defendants have not attempted to establish that Ocampo was aware of the procedural mechanism that allowed him to appeal a favorable determination by, for example, submitting an inmate handbook that detailed the steps of the grievance process or even alleging that Ocampo received an inmate handbook that detailed this grievance procedure. See, e.g., Smith v. City of New York, 12-CV-3303, 2013 WL 5434144, at *24 (S.D.N.Y. Sept. 26, 2013) (rejecting plaintiff's contention that administrative remedies were unavailable because he was not informed of the applicable grievance procedure when plaintiff received an inmate handbook and was "therefore, charged with familiarity with all steps of the grievance process, as outlined in that Handbook").

For the reasons set forth above, the Court adopts Magistrate Judge Go's recommendation that the Court find the defendants did not satisfy their burden of establishing that Ocampo failed to exhaust available administrative remedies. Defendants, however, are free to move for summary judgment at a later time on a more fully-developed record on the issue of exhaustion. See, e.g., McCullough v. Burroughs, No. 04-CV-3216(FB)(LB), 2008 WL 2620123, at *1

(E.D.N.Y. June 30, 2008) (noting that court previously converted defendants' motion to dismiss based on failure to exhaust to one for summary judgment and denied it, but considered later motion for summary judgment on same issue in light of a fully-developed record and granted later motion).

## II. Personal Involvement of Superintendent Breslin

The R&R recommended that the Court deny defendants' motion to dismiss the claims against Superintendent Breslin because Ocampo sufficiently demonstrated that Superintendent Breslin was personally involved in the alleged deprivation of medical care. Superintendent Breslin objects to this determination, arguing that reviewing an inmate's grievance and receiving letters of complaint from an inmate are insufficient to establish the personal involvement of a supervisory defendant.[4]

At the outset, the Court acknowledges that affirming the denial of a grievance is insufficient to establish the personal involvement of a prison superintendent, Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002), and that the "mere receipt of a letter from an inmate, without more, does not constitute personal involvement for the purposes of section 1983 liability," A'Gard v. Perez, 919 F. Supp. 2d 394, 407 (S.D.N.Y. 2013) (internal quotation marks and citations omitted). However, "[w]here a supervisory official reviews and responds to a prisoner's [letter of] complaint, [he] is personally involved." Lloyd v. City of New York, 12-CV-3303(CM), 2014 WL 4229936, at *9 (S.D.N.Y. Aug. 4, 2014) (citing Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002)).

---

[4] Although the objections state that "[d]efendants object to the Magistrate Judge's recommendation that the motion to dismiss be denied with respect to defendants Koenigsmann and Breslin," (Defs.' Objections at 2), the objections do not address the R&R's finding that Ocampo sufficiently pleaded Dr. Koenigsmann's personal involvement in the alleged deprivation of medical care. Accordingly, the Court only addresses whether Ocampo sufficiently pleaded the personal involvement of Superintendent Breslin.

The Court agrees with the R&R that, at this stage of the proceedings, Ocampo has sufficiently alleged Superintendent Breslin's personal involvement in the failure to provide him with adequate medical treatment. Superintendent Breslin's personal involvement in the instant action is not premised solely on his August 8, 2011 determination regarding Ocampo's Hepatitis C related grievance, or the mere receipt of letters regarding Ocampo's medical treatment. Rather, the supplemental materials submitted by Ocampo suggest that Breslin not only received letters regarding Ocampo's medical treatment, but also responded to them.[5] (See Pl.'s Reply, D.E. # 36-1 at 49 (letter dated January 4, 2010 from Ocampo's attorney, Astrid Fiano, to Deputy Director Klein regarding Ocampo's medical treatment, which states that she is "in regular contact with Superintendent Breslin at the Arthur Kill Correctional Facility where Mr. Campo is an inmate");[6] id. at 50 (letter dated January 31, 2010 from Astrid Fiano to Superintendent Breslin in which she states "Thank you for your response to my letter concerning Mr. Campo's medical treatment.").)

To the extent Superintendent Breslin argues in his objections that Ocampo has failed to provide Superintendent Breslin's responses that corroborate these statements, (Defs.' Objections at 15-16), the Court notes that in deciding a motion to dismiss, the Court accepts as true Ocampo's factual allegations and views them in the light most favorable to him. See Jones v.

[5] The Court agrees with the R&R's reliance on supplemental materials submitted by Ocampo in opposition to defendants' motion to dismiss because "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." Walker v. Schult, 717 F.3d 119, 123 n.1 (2d Cir. 2013); see Orakwue v. City of New York, No. 11-CV-6183(RRM)(VMS), 2013 WL 5407211, at *1 (E.D.N.Y. Sept. 25, 2013) (relying on, among other things, facts included in affidavit and exhibits attached to plaintiff's opposition to defendant's motion to dismiss).

[6] Defendants appear to argue in their objections to the R&R that this January 4, 2010 letter concerns Ocampo's request for medical parole, which is no longer an issue in the instant case, and therefore this letter does not support a finding of personal involvement by Superintendent Breslin with respect to Ocampo's medical treatment at the facility. (Defs.' Objections at 15.) This argument ignores the context of the letter as it relates to Superintendent Breslin. The letter first discusses the issue of obtaining medical parole for Ocampo and then goes on to state "[i]n the meantime, I am in regular contact with Superintendent Breslin at the Arthur Kill Correctional Facility," noting that Ocampo "who is afflicted with Hepatitis C, Stage four, has received uneven medical treatment at the facility" and that the "immediate concern remains [Ocampo's] present medical treatment." (Defs.' Objections Ex. A.)

Nickens, 961 F. Supp. 2d 475, 494 (E.D.N.Y. 2013) (stating that, although defendants took issue with plaintiffs' factual allegations, "at the motion to dismiss stage the Court [was] required to accept those allegations as true and view them most favorable to plaintiffs"). Accordingly, on the basis of factual allegations demonstrating that Superintendent Breslin personally responded to issues regarding Ocampo's medical care beyond reviewing the grievance Ocampo filed, at this stage of the proceedings Ocampo has sufficiently alleged Superintendent Breslin's personal involvement in the failure to provide Ocampo with adequate medical care.

## CONCLUSION

For the reasons set forth above, the Court rejects the objections raised by Dr. Koenigsmann and Superintendent Breslin. The parties have not objected to the remaining recommendations in the R&R, and the Court has found no clear error on the face of the record. Accordingly, the Court adopts the recommendations of the R&R.[7] Defendants' motion to dismiss is granted with respect to the claims against Fischer, Evans, and Ezekwe, and denied with respect to the claims against Dr. Koenigsmann and Superintendent Breslin. Further, Ocampo is granted leave to amend his claims against Ezekwe. Any amended complaint containing additional claims against Ezekwe shall be filed within one month of the date of this Order. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Dated: December 31, 2014
Brooklyn, N.Y.

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge

[7] As noted above in footnote 3, the Court does not adopt the portion of the R&R which concluded that the continued denial of a new Hepatitis C treatment after Superintendent Breslin's August 8, 2011 determination did not constitute a "failure to implement" that determination pursuant to N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.5(c)(4).